# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: July 29, 2019

| | |
|---|---|
| * * * * * * * * * * * * * * * * * | UNPUBLISHED |
| JORGE RODRIGUEZ, *legal* * | |
| *representative of a minor child,* M.R., * | |
| * | No. 14-722V |
| Petitioner, * | |
| v. * | Special Master Gowen |
| * | |
| SECRETARY OF HEALTH * | Motion for Relief from Judgment; |
| AND HUMAN SERVICES * | RCFC 60(b)(1); RCFC 60(b)(6); |
| * | Denial. |
| Respondent. * | |
| * * * * * * * * * * * * * * * * * | |

Peter M. Zirbes, Peter M. Zirbes, Esq., PC, Forest Hills, NY, for petitioner.
Robert P. Coleman, United States Department of Justice, Washington, DC, for respondent.

### ORDER DENYING PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT[1]

On March 6, 2017, I dismissed Jorge Rodriguez's ("petitioner") petition to seek compensation pursuant to the National Vaccine Injury Compensation Program[2] for failure to prosecute and insufficient proof. Dismissal Decision (ECF No. 46). Judgment was entered on the order dismissing the case on April 6, 2017. (ECF No. 48). On May 9, 2019, petitioner filed a Motion for Relief from a Judgment or Order ("Mot. for Relief") (ECF No. 49). The Motion for Relief was filed pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure ("FRCP").[3] Mot. for Relief at ¶ 1. For the reasons discussed below, I find that petitioner has set forth no valid

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this Order contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the Ruling will be available to anyone with access to the Internet.** Before the Order is posted on the court's website, each party has 14 days to file a motion requesting redaction of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the Order will be posted on the court's website without any changes.** *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

[3] Rules of the U.S. Court of Federal Claims ("RCFC") Rule 60 is identical to FRCP 60 and the same standards apply for evaluating the rules. *Dobyns v. United States*, 915 F.3d 733, 737 n.1 (Fed Cir. 2019); *see also Information Sys. and Networks Corp. v. United States*, 994 F.2d 792, 794 n.3 (Fed. Cir. 1993).

basis for justifying relief from a judgment or order and petitioner's Motion for Relief from a Judgment or Order is **DENIED**.

## I.     Procedural History

On August 8, 2014, petitioner filed a petition on behalf of his minor child, M.R., for compensation pursuant to the National Vaccine Injury Compensation Program.  Petition (ECF No. 1).  Petitioner alleged M.R. received the "Hepatitis B, Polio, MMR, Varicella, TDAP, and Meningococcal" vaccinations on November 2, 2011 which subsequently caused M.R. to suffer an "immediate allergic reaction, hives, rashes, and other deleterious effects."  Petition at 1, ¶ 1. Petitioner also alleged that M.R. suffered from a Table injury[4] when she suffered anaphylactic shock as a reaction to vaccination and that M.R. experienced a developmental delay as a result. Petition at ¶¶ 7-10.

Prior to filing the petition to the Vaccine program, petitioner filed a case in the Supreme Court of the State of New York in Queens County against New York City Health and Hospitals Corporation for M.R.'s alleged vaccine-caused injury.  Pet. Ex. B (ECF No. 15).  Petitioner stipulated a discontinuance without prejudice of the case against New York City Health and Hospitals Corporation on February 14, 2013.  Pet. Ex. C (ECF No. 15).

Petitioner's counsel was not admitted to practice before the United States Court of Federal Claims when the petition was initially filed.  After multiple communications and an Order to Show Cause (ECF No. 7), petitioner's counsel was admitted to practice before the United States Court of Federal Claims on November 6, 2014.  I held an initial status conference directing petitioner to file all outstanding medical records and a Statement of Completion by January 5, 2015 (ECF No. 9).  After I granted a Motion for Extension of Time on January 20, 2015 (ECF No. 11) and issued a Non-Compliance Order on February 24, 2015 (ECF No. 12), petitioner filed medical records on April 7, 2015.  Pet. Ex. E (ECF No. 17).  This was followed by his Statement of Completion on April 15, 2015.  (ECF No. 20).

On May 29, 2015, respondent filed his Rule 4(c) report recommending against compensation.  Respondent's ("Resp.") Report (ECF No. 21).  On June 23, 2015, I held a Rule 5 status conference where I expressed concerns over a lack of a clear diagnosis, lack of evidence of an initial allergic reaction to the vaccination, and lack of an injury extending beyond six months. *See* Rule 5 Scheduling Order (ECF No. 22).  I ordered petitioner to obtain an expert report satisfying the legal standards in *Althen*[5] which I described to petitioner's counsel during the status conference.  *See* Rule 5 Scheduling Order (explaining *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005)) (ECF No. 22).

On August 24, 2015, petitioner filed a motion for an extension of time stating he was unsuccessful in retaining an expert after contacting seven potential experts.  (ECF No. 23).  The

---

[4] A "Table" injury is an injury listed on the Vaccine Injury Table within 42 U.S.C. § 100.3 corresponding to specific vaccinations and time-frames.

[5] *Althen* requires satisfaction of three factors: (1) a medical theory of causation; (2) a logical sequence of cause and effect; and (3) a medically acceptable temporal relationship between the vaccination and the injury.

motion was granted and petitioner was given until October 26, 2015 to file an expert report.  (ECF No. 24).

On November 4, 2015, petitioner filed a motion for an extension of time stating he had retained Dr. Afshan Khan as an expert and would like additional time for Dr. Khan to review M.R.'s records, perform an examination of M.R., and write an expert report.  (ECF No. 27).  From 2015 through 2016, petitioner was granted seven extensions of time to file an expert report.  (ECF Nos. 27-37).  The court informally communicated on multiple occasions to petitioner about the overdue expert report and to file the expert report or a status report concerning the report.  Informal Communications (June 24, 2016; Sept. 9, 2016; Sept. 21, 2016).  On August 1, 2016, petitioner filed a motion for an extension of time stating that the expert report would be filed by the end of August 2016 after a fee dispute between Dr. Khan and petitioner's counsel's office was resolved.  (ECF No. 37).

On October 10, 2016, petitioner filed a status report stating he had paid Dr. Khan's requested fee on October 5, 2016.  (ECF No. 40).  However, petitioner did not file an expert report.  *Id.*  On November 15, 2016, I ordered petitioner to show cause by December 7, 2016 as to why the case should not be dismissed when no expert report had yet been filed.  (ECF No. 41).  Petitioner filed a response on December 7, 2016 with a request for another extension of time.  (ECF No. 42).  Petitioner's counsel stated that both he and the petitioner had difficulty reaching Dr. Khan as she was on vacation in November 2016 but had since returned and would provide a preliminary draft of her report by December 9, 2016.  *Id.*  I granted the requested additional time on December 8, 2016.  (ECF No. 43).  In the order granting the extension, I stated that if the expert report was not filed by January 16, 2017, petitioner could expect the case to be dismissed for failure to prosecute.  *Id.*

Petitioner did not file an expert report by January 16, 2017 and did not notify the court of any changed circumstances.  My law clerk left multiple messages for petitioner's counsel warning him that the case would be dismissed.  Dismissal Decision (ECF No. 46) at 2.  Petitioner filed another motion for an extension of time to file an expert report on February 1, 2017.  (ECF No. 44).  Petitioner stated that it would be the final request for an extension of time and the expert report would be provided to petitioner's counsel by February 13, 2017 and filed by February 28, 2017.  *Id.*  On February1 2017, I granted the motion and stated that if an appropriate expert report was not filed by February 28, 2017, the case would be dismissed for insufficient evidence.  (ECF No. 45).  Petitioner did not file an expert report by February 28, 2017.  Thus, I dismissed the case for failure to prosecute and for insufficient evidence on March 6, 2017.  Dismissal Decision (ECF No. 46).  Judgment was entered dismissing the case on April 6, 2017.  (ECF No. 48).  There were no communications between petitioner and the Court between April 6, 2017 and May 9, 2019.

On May 9, 2019, petitioner filed a motion to vacate the decision and judgment dismissing the case.  Mot. for Relief (ECF No. 49).  Petitioner stated that the ordered expert report became available "on or around December 25, 2018." Mot. for Relief at ¶ 65.  Consequently, petitioner requested the Motion for Relief to be granted and for this case to be resolved on the merits.  Mot. for Relief at ¶ 79.

Respondent filed a response to petitioner's Motion for Relief on May 22, 2019.  Resp. Response (ECF No. 51).  Petitioner did not file a reply.  This matter is now ripe for adjudication.

## II.     Summary of Arguments

### a.  Petitioner's Motion

In the Motion for Relief, petitioner seeks relief from judgment pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure ("FRCP").   Mot. for Relief at ¶ 1.   Petitioner generally invokes Rule 60(b)(1) to assert grounds of mistake, inadvertence, surprise, or excusable neglect. *Id.*   However, petitioner does not point to a specific ground or substantiate the rationale to explain whether his claim is based on mistake, inadvertence, surprise, or excusable neglect.

First, petitioner argues that the delay in the expert report was due to issues between Dr. Khan and petitioner's counsel as well as counsel losing staff due to being out of the office while his wife was being treated for breast cancer. *Id.* at ¶¶ 56-57.   Petitioner explained that the selection of Dr. Khan as an expert was based on Dr. Khan's assertions that she had expertise in writing expert reports for vaccine injury cases. *Id.* at ¶ 47.   However, he stated that it was soon apparent that Dr. Khan did not understand what was required by *Althen*, was uncommunicative, and did not keep promises on writing the report. *Id.* at ¶¶ 52-55, 60-61.

Second, petitioner argues that his claim should be decided on the merits as there is a preponderance of the evidence that petitioner was injured by a vaccine. *Id.* at ¶ 71.   As an attachment to the Motion for Relief, petitioner filed evidence of testimony from a 50-h hearing in the case brought by petitioner against New York City Health and Hospitals Corporation.   Mot. for Relief Attach. 29.   The testimony described that M.R. suffered symptoms of swollen lips, red colored bumps on the body, and weakness in the legs within hours of vaccination that led M.R.'s family to call an ambulance.   Mot. for Relief at ¶¶ 72-75; Mot. for Relief Attach. 29 at 49-51.

Petitioner included in the Motion for Relief what is asserted to be Dr. Khan's original report which was not previously filed.   Mot. for Relief Attach. 24.   The Motion for Relief also includes what is asserted to be Dr. Khan's updated, final report.   Mot. for Relief Attach. 28.

### b.  Respondent's Opposition

Respondent opposes petitioner's motion.   First, respondent argues that petitioner is solely seeking relief based under FRCP 60(b)(1) which is time-barred by FRCP 60(c).   Resp. Response at 2 (ECF No. 51).   Respondent states that FRCP 60(c) only allows relief under FRCP 60(b)(1) if the motion is filed within one year of judgment. *Id.* at 2-3.   Respondent states that any relief sought by petitioner under 60(b)(1) is time-barred since the motion was filed well-after the period allowed by Rule 60(c). *Id.* at 3.

Second, respondent argues that petitioner only recites the general grounds for relief and does not explain how the facts in this case or the facts stated in the motion apply. *Id.*   Respondent argues that even if petitioner attempts to show legal justification for relief under 60(b)(1) for excusable neglect, those arguments should be rejected as counsel had reasonable control over the case and circumstances. *Id.*   Respondent cites to *Guillot* where relief was denied since petitioner had control over seeing notices and replying to court orders. *Id.* (citing *Guillot v. Sec'y of Health & Human Servs.*, No. 03-775, 2012 WL 3867160, at *2 (Fed. Cl. Spec. Mstr. Aug. 15, 2012)).   In this case, respondent argues that petitioner clearly knew of the final deadlines as there were ten

extensions of time to file an expert report and declined to file a report due to defects in the report. Resp. Response at 3-4.  As a result, petitioner knew about the deadline, had the expert report, and chose not to file the report, clearly showing control over the circumstances.  *Id.*  Therefore, relief cannot be granted.  *Id.*

### III.   Legal Standard

In accordance with the Vaccine Rules of the United States Court of Federal Claims,[6] a party may seek relief from a judgment or order pursuant to Rule 60 of the Rules of the Court of Federal Claims ("RCFC").  Vaccine Rule 36(a).  RCFC 60 is identical to FRCP 60 and the same standards apply for evaluating the rules.  *Dobyns v. United States*, 915 F.3d 733, 737 n.1 (Fed Cir. 2019); *Blake v. Sec'y of Health & Human Servs.,* No. 03-31V, 2014 WL 7331948, at *4 (Fed. Cl. Spec. Mstr. Sept. 11, 2014).

RCFC 60 states several grounds for relief from "a judgment, order, or proceeding" "on motion and just terms."  RCFC 60(b).[7]  Motions for relief under RCFC 60(b) "seek…to set aside a final decision and it is incumbent upon the motion-filer to demonstrate that he…is entitled to relief."  *Kennedy v. Sec'y of Health & Human Servs.*, 99 Fed. Cl. 535, 550 (2011).  The motion's statements are "not like a pleading,…, in which the factual allegation[s] are presumed true."  *Id.*

RCFC 60(b)(1) offers four grounds for relief to be granted: mistake, inadvertence, surprise, or excusable neglect.  To establish aprima facie claim under RCFC 60(b)(1), three factors are considered: "(1) whether the movant has a meritorious claim…, (2) whether the nonmovant would be prejudiced by the granting of relief; and (3) whether the matter sought to be relieved was caused by the movant's own culpable conduct."  *Orient Overseas Container Line Ltd. v. United States*, 52 Fed. Cl. 805, 807 (2002); *see also Stelco Holding Co. v. United States*, 44 Fed. Cl. 703, 708-09 (1999); *Information Sys. and Networks Corp. v. United States*, 994 F.2d 792, 795 (Fed. Cir. 1993).

To establish a meritorious claim, a claim needs to be legally tenable.  *See Curtis v. United States*, 61 Fed. Cl. 511, 512-13 (2004); *Stelco*, 44 Fed. Cl. at 709.  The claim must be meritorious prior to any grant of relief under RCFC 60(b) such that "vacating the judgment will not be an empty exercise."  *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992).

---

[6] As authorized under §§ 300aa-12(d)(2) of the Vaccine Act and on the recommendation of the special masters, the Court of Federal Claims has promulgated Vaccine Rules that govern petitions under the Act.

[7] RCFC 60(b) states: On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
   (1)  mistake, inadvertence, surprise, or excusable neglect;
   (2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
   (3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
   (4)  the judgment is void;
   (5)  the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
   (6)  any other reason that justifies relief.

RCFC 60(b)(1) has a time bar set by RCFC 60(c)(1).  RCFC 60(c)(1) requires that "a motion under RCFC 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3), no more than a year after the entry of the judgment or order or the date of the proceeding." RCFC 60(c).  Any motion seeking relief under RCFC 60(b)(1), (2), or (3) that are filed after the one-year mark are completely barred.  *See United States v. Berenguer*, 821 F.2d 19 (1st Cir. 1987); *Freeman v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 280, 283 (1996); *Kenzora v. Sec'y of Health & Human Servs.*, No. 10-669V, 2015 WL 6121582, at *2 (Fed. Cl. Spec. Mstr. Sept. 25, 2015).  If a motion is brought after the one-year mark from judgment or order or the date of proceeding, they must be made pursuant to RCFC 60(b)(4), (5), or (6).  *Freeman*, 35 Fed. Cl. at 283.

RCFC 60(b)(6) is an equitable remedy allowing for the vacating of a judgment for "any other reason that justifies relief."  RCFC 60(b)(6).  Courts have discretion to grant relief when "appropriate to accomplish justice."  *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (quoting *Matarese v.* LeFevre, 801 F.2d 98, 106 (2d Cir. 1986)); *see also Kennedy*, 99 Fed. Cl. at 540 (2011) (*quoting United States v. Beggerly*, 524 U.S. 38, 47 (1998)).  This does not, however, grant "unfettered discretion" to vacate judgment.  *Infiniti Info. Solutions, LLC v. United* States, 93 Fed. Cl. 699, 704 (2010).  To obtain relief under RCFC 60(b)(6), a showing of "extraordinary circumstances" is required.  *Kennedy*, 99 Fed. Cl. at 548 (*citing Ackermann v. United States*, 340 U.S. 193, 202 (1950)); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).  If the "substantial rights of the party have not been harmed by the judgment or order," relief is not generally granted.  *Vessels v. Sec'y of Health & Human Servs.*, 65 Fed. Cl. 563, 568 (2005) (*citing Curtis v. United States*, 61 Fed. Cl. 511, 512 (2004)).

## IV.  Discussion

### a.  Relief Pursuant to Rule 60(b)(1) is Time Barred Under Rule 60(c)

Petitioner filed his Motion to Vacate the Judgment or Order on May 9, 2019.  Mot. for Relief (ECF No. 49).  Petitioner requests relief generally under Rule 60(b)(1).  Mot. for Relief at ¶ 1.  Petitioner cannot invoke excusable neglect as a ground for relief under RCFC 60(b)(1).[8] Petitioner received multiple extensions of time to file an expert report.  *See* Orders (ECF Nos. 24, 28, 30, 32, 34, 36, 41, 43, 45, non-PDF Order (Aug. 1, 2016)).  Petitioner was granted every reasonable opportunity to file an expert report from 2015 through 2017 and was warned on more than one occasion that the failure to file an expert report would result in dismissal of the petition. (ECF Nos. 41, 43).  The circumstances of acquiring an expert and the subsequent issues with the expert report were under the reasonable control of counsel.  Much like in *Guillot*, where the court denied petitioner's request for relief under 60(b)(1) because counsel had control over the circumstances in that counsel was responsible for checking the court filing system for orders even in the absence of receiving electronic notifications, petitioner's counsel had similar control over all aspects of this case.  *Guillot*, 2012 WL 3867160, at *8-*9.  Therefore, excusable neglect would not be available as a ground for relief.

---

[8] The other grounds for relief under 60(b)(1), mistake, inadvertence, and surprise did not occur in this case and therefore are not options for grounds for relief.

Despite counsel's request for relief under RCFC 60(b)(1), the motion to vacate judgment pursuant to RCFC 60(b)(1) is time-barred by RCFC 60(c)(1). The order to dismiss the case was filed on March 6, 2017 and judgment was entered on April 6, 2017. (ECF Nos. 46, 48). Using the later event, petitioner's motion was filed over two years and one month after the entry of judgment. This is far outside the allowable time-frame provided by RCFC 60(c) for granting relief. Even motions to vacate pursuant to 60(b)(1) filed eight days after the one-year deadline, as in *Berenguer,* are denied for being untimely and time-barred. *Berenguer*, 821 F.2d at 21. In the more similar case of *Kenzora*, petitioner was time-barred from seeking relief under RCFC 60(b)(1)-(4) as their motion was filed approximately one year and ten months after judgment was entered. *Kenzora*, 2015 WL 6121582, at *4. Regardless of the merits of the underlying case, petitioner's motion to vacate pursuant to RCFC 60(b)(1) is time-barred under Rule 60(c)(1).

### b.  Relief is Not Appropriate Under RCFC 60(b)(6)

Petitioner did not explicitly request relief under RCFC 60(b)(6). However, petitioner asserts that M.R.'s "diagnosis is unequivocal, and clearly establishes causation" and requests that the claim "be decided on the merits." Mot. for Relief at ¶¶ 77, 79. Read liberally, effectively, petitioner is requesting the judgment to be vacated such that the case can be decided on the merits, constituting a request for relief for "any other reason that justifies relief." RCFC 60(b)(6).

Relief provided under RCFC 60(b)(6) is limited to avoid a "grave miscarriage of justice" and the moving party must demonstrate "extraordinary circumstances." *Kennedy v. Sec'y of Health & Human Servs.,* 99 Fed. Cl. at 548 (2011).

The Court of Federal Claims found extraordinary circumstances when a petitioners' petition was lost by a third-party courier service and, as a result, the petition was not filed timely and the statute of limitations had run. *Mojica v. Sec'y of Health & Human Servs.,* 102 Fed. Cl. 96, 101-02 (2011). In *Coleman*, Former Chief Special Master Campbell-Smith[9] found that a petitioner would be unduly prejudiced if not given an opportunity to review the underlying claim with supplemental expert reports that were only a few days late. *Coleman v. Sec'y of Health & Human Servs.,* 2011 WL 6828475 at *6 (Fed. Cl. Spec. Mstr. Dec. 7, 2011).

### 1.  M.R.'s Medical Records Do Not Reflect a Compensable Claim in the Vaccine Program

M.R. and her father immigrated from the Dominican Republic in 2011. On November 2, 2011, M.R. received a group of vaccinations needed for her to attend school. Pet. Ex. 14-722 part 4 at 35. The medical record shows that M.R. had an allergic reaction and developed urticaria to the vaccinations received on November 2, 2011. Pet. Ex. F at 1. However, these initial symptoms resolved when Benadryl and Prednisone were administered at Elmhurst Hospital on November 2, 2011. *Id.* at 1-2. M.R. was discharged in stable condition on the same day. *Id.*

M.R. was seen in the emergency department ("ED") at Elmhurst Hospital on the evening of November 3, 2011 for shaking and shivering approximately six hours after taking Benadryl. *Id.* at 23, 26. M.R. was afebrile and a physical examination showed some hyperpigmented spots and

---

[9] Chief Special Master Campbell-Smith was appointed Judge of the United States Court of Federal Claims on September 19, 2013.

a slight murmur in M.R.'s heart.  *Id.* at 26.  M.R. was discharged home on November 4, 2011 in the early morning with a diagnosis of a drug reaction and instructed to discontinue Benadryl.  *Id.* at 26, 29-30.  At the time of discharge, her treating physician noted no urticarial rashes.  *Id.* at 30.

On November 5, M.R. was admitted to Flushing Hospital for "headache post vaccination… with subsequent allergic reaction…resolved with Benadryl and pred[nisone]."  Pet. Ex. E at 49-50.  M.R. was hospitalized from November 5-11, 2011.  *Id.*  Within the progress notes, M.R.'s treating physicians noted that M.R. has a history of headache episodes with the most recent episode being prior to moving to the United States.  *Id.* at 84.  The discharge summary stated M.R. had an extensive work-up for meningitis with a CT scan, MRI, and EEG.  *Id.* at 49-50.  All three tests were normal.  *Id.*  On the day of discharge, M.R. was not in acute distress and reported her headaches were resolved after improving from a level of 8/10 to 3/10 to no headache.  *Id.*

By December 2, 2011, M.R. complained of weakness in both legs and prolonged headaches when she saw Dr. Zia Ahmed.  Pet. Ex. E at 47-48.  Dr. Ahmed documented a headache, weakness of grip and bilateral weakness in her legs.  *Id.*  However, Dr. Ahmed noted that M.R.'s deep tendon reflexes were intact bilaterally.  *Id.*  On February 9, 2012, M.R. had a consultation with Dr. Allan Hausknecht, a neurologist.  Pet. Ex. F at 43-45.  Dr. Hausknecht indicated that M.R.'s reflexes in her lower extremities were unobtainable even with reinforcement.  *Id.*  Dr. Hausknecht expressed a desire to review M.R.'s medical records from Flushing Hospital and tentatively diagnosed M.R. with Guillain-Barré syndrome ("GBS").  *Id.*  M.R. saw Dr. Ahmed in April 2012 who elicited reflexes in M.R.'s knees and found increased strength in M.R.'s grip and extremities.  Pet. Ex. E at 41-42.   Dr. Ahmed indicated M.R.'s normal nerve conduction velocities in the presence of persistent weakness in the legs strongly suggests that M.R. has a psychogenic illness.  *Id.*

During a status conference held on June 23, 2015, I informed petitioner's counsel that the medical records and M.R.'s medical history do not provide a "clear diagnosis of a possible vaccine-related injury" and showed "no further support…that [the initial allergic reaction] or any other condition persisted for six months."  *See* Order (ECF No. 22).  M.R. likely had an unfortunate allergic reaction to one or more of the vaccines she received on November 2, 2011.  However, the reaction was not sufficient so as to be classified as anaphylactic shock as defined within the Qualifications and Aids to Interpretation ("QAI") for categorizing injuries within the Vaccine Program.[10]  GBS was suggested within M.R.'s medical records but a normal CSF protein level and normal deep tendon reflexes eliminated GBS as a diagnosis.  *See* Pet. Ex. E at 39-42, 81, 88.  There was no persistent diagnosis by M.R.'s treating physicians suggesting that M.R. suffered from an autoimmune condition as a result of her vaccinations.

Additionally, the symptoms of the allergic reaction were short-lived and resolved well before the six-month requirement of symptoms required in the Vaccine Program.  As a result of Dr. Ahmed's suggestion of a psychogenic illness and a lack of a clear diagnosis of a possible vaccine-induced injury within M.R.'s medical records that lasted more than six months, petitioner failed to establish the preliminary requirements to support her petition.

---

[10] Vaccine Injury Table at 4-12, as authorized in accordance with 42 U.S.C. § 300aa-1, https://www.hrsa.gov/sites/default/files/vaccinecompensation/vaccineinjurytable.pdf (last accessed July 17, 2019).

2.   **The Late Filed Expert Reports by Dr. Khan are Inadequate to Support Petitioner's Claim**

During a June 23, 2015 status conference, I directed petitioner to seek and file an expert report that addressed the *Althen* prongs in support of petitioner's claim. *See* Order (ECF No. 22).

As this was counsel's first (and to date, only) case in the Vaccine Program, I explained to him the requirements of the Vaccine Program.  Further, I explained that litigation in the Vaccine Program is sophisticated and usually requires the use of expert opinions to not only understand a petitioner's underlying diagnosis but to provide a theory causally connecting the vaccine to a petitioner's injury.

The case was dismissed before petitioner filed a report by Dr. Khan.  Petitioner's counsel stated that he received Dr. Khan's initial expert report on February 26, 2017 but the report was not fileable in good conscience because "it was destined to be deemed insufficient to establish the injuries claimed by the petitioner."  Mot. for Relief at ¶¶ 40-41.  Counsel explained that he attempted to assist Dr. Khan with drafting the expert report by providing her case law and thorough guidance as to what information and analysis expert reports are expected to contain.  *Id.* at ¶ 61.  Eventually, after petitioner and her family met with Dr. Khan in October 2018, Dr. Khan agreed to draft a revised report for a $900.00 fee.  *Id.* at ¶¶ 63-64.  Both reports were attached with the instant motion.  Mot. for Relief Attach. 24 & 28.   Petitioner's counsel asserts that the two expert reports filed with the motion, along with M.R.'s medical records are sufficient to show causation. *Id.* at ¶ 77.

Petitioner's counsel explains that, "Dr. Khan was perplexed by the fact that the *Althen* decision indicated that the examining expert should also provide references to the texts upon which she relied for her theory of casual relationship, and did not finally fully understand this until she finally produced the new, updated report…" Mot. for Relief at ¶ 52.  However, neither version of Dr. Khan's reports actually demonstrates that she fully understood the *Althen* prongs at any point during her consideration of petitioner's case.

Initially, Dr. Khan was fixated on her desire to see the lot and batch number of the vaccinations M.R. received, attempting to show the vaccines were defective.  *See* Mot. for Relief at ¶ 50-51.  I explained to counsel that this was rarely, if ever, shown or necessary in the Vaccine Program as it is not necessary to show any defect within a vaccine to prove a case.  *See* Order (ECF No. 34).

After resolving this initial misunderstanding, counsel still had numerous problems with Dr. Khan who represented that she knew how to write an expert report for the Vaccine Program.  It became apparent that she did not.[11]  Dr. Khan's reports include conclusory statements without specific reference to the medical record, do not contain any actual theory of causation, include diagnoses unsupported by the medical record and incorrectly includes references to Thimerosal, a

---

[11] I conducted a review of Vaccine Program cases and saw that Dr. Khan has not appeared as an expert in the Vaccine Program previously where experts are generally highly qualified with an understanding of immunology and have an ability to assess vaccine-injury causation.

preservative that is no longer included in childhood vaccinations as a potential causal agent.

A recitation of the History and Discussion sections of Dr. Khan's "revised" report is illustrative of the issues discussed above:

**History**

The patient is a 20 year-old female who is S/P vaccination on 11/02/11 with Hep B, IPV, MMR, Tdap, Meningococcal and varicella vaccines, and batch numbers unavailable

This was complicated by emergence of adverse events necessitating hospitalization at Flushing Hospital on 11/5/11 for 17 days. She developed rash, headaches, dizziness, altered mental status, weakness right lower extremity, episode of shaking, [d]iagnosis of meningitis/encephalitis was considered, GBS ruled out as EMG/NCV, reflexes and CSF normal. In addition unenhanced MRI brain, Cspine was normal, follow up scans were not performed

**Discussion**

Based on temporal association, exclusion of other etiologies, her current leg weakness as described and documented by Dr Maria Duran Soriano Pediatric neurologist on multiple visits are vaccine associated as she does not provide any other etiology of leg weakness that she documents on every visit

Aluminum adjuvants in above vaccines have been implicated in autoimmune and inflammatory syndromes resulting in acute disseminated encephalomyelitis

Thiomersal [sic] an organic mecury [sic] compound also has been linked with adverse neurological events

MRI brain with contrast was not performed during hospitalization

Acute disseminated encephalitis (ADEM) is an inflammatory demyelinating disease on CNS which has been associated with several vaccines, including MMR, Meningococcal, Hep B and other vaccines.

Mot. for Relief Attach. 28 at 1-2.

First, at no point in the medical records is there a diagnosis of ADEM. Multiple brain MRIs without contrast were normal except for a small mass on M.R.'s scalp. Pet. Ex. E at 15, 29, 49; Pet. Ex. G at 18. If M.R. had ADEM, the MRIs likely would have shown lesions regardless of whether contrast was used.[12] A head CT scan showed no intracranial lesion. Pet. Ex. G at 20.

---

[12] MRIs of patients who are diagnosed with ADEM will show lesions. Although lesions in an MRI can indicate either ADEM or multiple sclerosis, an MRI that shows lesions is key in diagnosing ADEM. *See* DJA Callen, et al., *Role of MRI in the Differentiation of ADEM from MS in Children*, 72 Neurology 968 (Mar. 17, 2009); RC Dale & JA Branson, *Acute Disseminated Encephalomyelitis or Multiple Sclerosis: Can the Initial Presentation Help in Establishing a Correct Diagnosis?*, 90 Archives of Disease in Childhood 636 (May 2005); KS Caldemeyer, et al., *MRI in Acute Disseminated Encephalomyelitis*, 36 Neuroradiology 216 (Apr. 1994).

M.R. also received thoracic and lumbar spine MRIs which showed normal thoracic spinal cord, no nerve root compression, no spinal stenosis, no abnormal enhancement, and no enhancing lesions. *Id.* at 16-17, 19. It is not clear if Dr. Khan was diagnosing M.R. with ADEM or making a general statement that post-vaccinal ADEM has been reported based on the abstracts attached to the report. Mot. For Relief Attach. 28 at 3-7. None of the medical records indicate that any of M.R.'s treating physicians were considering a diagnosis of ADEM. Additionally, and more importantly, Dr. Khan made no attempt to specify which symptoms in the medical record led her to a diagnosis of ADEM, if in fact that is her diagnosis, nor did she propose a mechanism causally connecting the relevant vaccines M.R. received to ADEM.

Second, Dr. Khan's assertions regarding the aluminum adjuvants are unsupported by the record. She failed to cite which vaccinations M.R. received included adjuvants. While one or more of the vaccines M.R. received could contain an aluminum adjuvant, Dr. Khan provided no explanation of how an adjuvant may have contributed to M.R.'s injury. Further, she stated Thimerosal has been linked to adverse neurological events without acknowledging that Thimerosal has been removed from childhood vaccines since 2001.[13]

Finally, Dr. Khan's reports fall drastically short of supporting any of the *Althen* prongs necessary to establish that the vaccine was the cause-in-fact for M.R.'s injuries.

Dr. Khan does not propose any cognizable theory connecting any of the vaccinations petitioner received to petitioner's injury as required by *Althen* prong one. *Id.* Instead, Dr. Kahn referenced ADEM, which is unsupported in the medical records, and that ADEM has been "associated with several vaccines." Mot. for Relief Attach. 28 at 1-2. Dr. Kahn did nothing more than state that ADEM has been related to vaccinations, which is not a theory causally connecting the vaccination to any actual injury suffered by M.R.

The second prong of *Althen* requires the petitioner to demonstrate a logical sequence of cause and affect showing the vaccination was the reason for the injury. *Althen* at 1278. In this case, the medical records demonstrate M.R. suffered a transient allergic reaction that could have been associated with the vaccinations. However, Dr. Kahn failed to demonstrate that petitioner had ADEM how the vaccinations could have caused this newly formed diagnosis and that this injury lasted for more than six months.

Finally, Dr. Kahn's reports make no reference to the timing of M.R.'s symptoms in relation to the vaccinations, other than to say, "based on the temporal association." Mot. for Relief Attach. 28 at 2. Thus, failing to demonstrate "a proximate temporal relationship between vaccination and injury," as required by *Althen* prong three. *Althen* at 1278. It is apparent, upon reviewing the

---

[13] CDC, *Vaccine Safety: Thimerosal in Vaccines*, https://www.cdc.gov/vaccinesafety/concerns/thimerosal/index.html (last accessed July 10, 2019). M.R. received the MMR, Tdap, Polio, Hepatitis B, Varicella, and Meningococcal vaccinations on November 2, 2011. While some adult vaccinations (specifically influenza) may contain Thimerosal, no variant of the vaccinations M.R. received contained Thimerosal. CDC, *Vaccine Excipient Summary*, http://www.cdc.gov/vaccines/pubs/pinkbook/downloads/appendices/B/excipient-table-2.pdf (last accessed July 10, 2019).

untimely filed reports, that Dr. Khan grossly misrepresented her ability to provide an expert report that would assist petitioner in proving her vaccine-related injury claim.

### 3. Petitioner's Counsel had Reasonable Control over the Case

As noted in prior cases, counsel's failure to evaluate the legal consequence of a given course of action provides no basis for relief. *G.G.M. by & Through Mora v. Sec'y of Health & Human Servs.*, No. 13-421V, 2015 WL 1275389, at *4 (Fed. Cl. Spec. Mstr. Feb. 27, 2015). Petitioner is bound by the conduct of their counsel. *Fischer v. Anderson*, 250 F. App'x 359, 362 (Fed. Cir. 2007).

The role of the Special Master for Vaccine Cases is to "make the proceedings expeditious, flexible, and less adversarial, while at the same time affording each party a full and fair opportunity to present its case…" Vaccine Rule 3(b)(2). In this case, petitioner was given a full and fair opportunity and more than adequate time to present the case. Over a two-year period, I held five status conferences with the parties (Nov. 18, 2014; Apr. 2, 2015; June 23, 2015; Mar. 31, 2016; Sept. 29, 2016); I granted the petitioner 10 extensions of time to file an expert report (ECF Nos. 24, 28, 30, 32, 34, 36, 41, 43, 45; Non-PDF Order (Aug. 1, 2016)); and I issued 15 Orders detailing what specific action counsel needed to take in order for the case to proceed. *See* Orders (ECF Nos. 7, 9, 14, 22, 24, 28, 30, 32, 34, 36, 41, 43, 45); Non-PDF Orders (Jan. 21, 2015, Aug. 1, 2016). Despite all of the guidance from the court, petitioner's counsel was encumbered by his own inexperience in the Vaccine program that was one of many factors leading to the dismissal of the petition.

Petitioner's counsel suggests that the blame for the late reports, and ultimately dismissal, should be laid at the feet of Dr. Khan. Indeed, Dr. Khan appears to have been incapable of producing an adequate and timely expert report. However, counsel had control over obtaining Dr. Khan, retaining Dr. Khan despite apparent issues and continuing to rely upon her as an expert. Counsel stated that he attempted to obtain seven other experts, but they declined. Pet. First Mot. for Extension of Time (ECF No. 23). When issues with Dr. Khan became obvious, such as charging an escalating fee to draft a report or an unreasonable delay in actually drafting the report, it was well within counsel's control to seek an alternate expert. However, counsel continued to pursue the case with Dr. Khan, but did not actually appear to provide Dr. Khan with the legal requirements of the Vaccine Program such as the *Althen* criteria until a year after the case had been dismissed.

In addition to the issues with Dr. Khan, counsel explained that during the course of the case, he had lost much of his office staff while caring for his wife during medical treatment. Mot. for Relief at ¶¶ 56-57. The situation with counsel's staff and family are unfortunate. However, he could have referred the case to other counsel while caring for his wife during her medical treatment or when he should have recognized that he was not prepared to litigate this case in the Vaccine Program. Instead, he made the decision to remain as counsel for petitioner, thus bearing responsibility for the course of action during litigation. Counsel eventually provided Dr. Khan with some legal references and cases in the Vaccine Program, but not until after the case had been dismissed. His assertion that Dr. Khan's final report definitively establishes causation and the court only needs to adjudicate damages (Mot. for Relief at ¶¶ 76-78) illustrates that he himself still does not grasp the legal standards and requirements to litigate a case within the Vaccine Program.

This case is unlike previous cases where relief has been granted under RCFC 60(b)(6). Unlike in *Coleman,* where the expert report was already in progress and, once filed, supported petitioner's claim, here the expert reports were not only filed *two years after the case was dismissed*, but lacked any substantive value in explaining M.R.'s diagnosis, a theory of vaccine causation, or demonstrating that an injury other than the initial allergic reaction lasted more than six months. *Coleman*, 2011 WL 6828475, at *6. Further, petitioner's counsel was in complete control of the course of action taken throughout the litigation. This is not a situation where a third-party delivery service inadvertently lost a package, causing petitioner to miss a filing deadline, as was the case in *Mojica*. *Mojica*, 102 Fed. Cl. at 101-02. Here, petitioner's counsel was granted multiple extensions of time to file an expert report, continued to retain the same expert even after significant issues arose and failed to take timely action after the petition had been dismissed to remedy the situation.

### 4. Petitioner Cannot Demonstrate Extraordinary Circumstances Necessary to Grant Relief Under 60(b)(6)

Petitioner's counsel wrongly assumed that filing Dr. Kahn's reports would be sufficient to overcome the high burden of showing extraordinary circumstances to grant relief and reopen the case, but also that the expert reports are sufficient to resolve this case on the merits if the motion was granted.

Petitioner's counsel asserts that Dr. Kahn's reports establish an unequivocal diagnosis "and clearly establish causation between petitioner's injuries and the vaccine….Therefore, the only remaining fort his honorable Court to adjudicate is the amount of compensation Petitioner should receive for her vaccine related injuries." Mot. for Relief at ¶¶ 76-77.

The Vaccine Act sets forth minimum requirements a petition for compensation must contain for a petitioner to be awarded compensation under the Program. §§300aa-11(c)(1)-(3) & 13(a)-(b). In this case, petitioner does not establish that the petition and supporting medical records document a compensable injury. One such requirement is the inclusion of any diagnosis regarding the nature and causation of a petitioner's illness or disability. §300aa-13(b)(1)(A). Neither the medical records or the expert reports provide a clear, well-supported diagnosis for the petitioner. As discussed at length above, the expert reports also fail to establish by a preponderance of evidence that the vaccinations were the cause-in-fact of M.R.'s injuries.

Furthermore, the difficulties petitioner's counsel experienced, both with Dr. Khan and the staffing issues at his practice do not constitute extraordinary circumstances. Petitioner's counsel had control over the entirety of this case, from filing the petition, to selecting the expert, and even through filing this untimely motion for relief from judgment. Petitioners' counsel was aware of the staffing issues inside his practice and of course, his wife's medical treatment demands. While these events are unfortunate, it was within counsel's control to mitigate any negative impact it may have on his client, the petitioner. Additionally, when petitioner's counsel discovered the difficulties with obtaining an adequate report from Dr. Khan, it was fully within his power to seek an alternate expert, however, he stayed the course, to his client's detriment. The series of unfortunate events that petitioner's counsel asserts led to the dismissal of the petition does not constitute exceptional circumstances where relief can be granted under Rule 60(b)(6).

## V.       Conclusion

Although dismissal of a claim for procedural failures is a harsh result, it is a foreseeable outcome of petitioner's failure to adhere to reasonable orders setting deadlines for the filing of an expert report. Simply complying with court orders two years after the fact does not constitute exceptional circumstances to grant extraordinary relief particularly when these reports do not advance petitioner's case nor further develop the record for consideration.

Petitioner's filing of the Motion for Relief is untimely and as the expert report submitted two years late does not begin to set forth the basis for a successful claim, no equitable remedy is available as such relief would be merely an exercise in futility.  In accordance with the foregoing, petitioner's Motion for Relief from a Judgment or Order is **DENIED**.

**IT IS SO ORDERED.**

<u>**s/Thomas L. Gowen**</u>
Thomas L. Gowen
Special Master